Carol M. CAPTLINE and Equibank, N.A., as Co–Executors of the Estate of Mike Mazzaro

v.

COUNTY OF ALLEGHENY.

Carol Mazzaro, formerly Carol M. Captline, Appellant.

Carol M. Captline and Equibank, N.A., as Co–Executors of the Estate of Mike Mazzaro

v.

The County of Allegheny, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.
Decided March 26, 1999.

Diana Slivinska, Clinton, for appellant.

Michael K. Parrish, Pittsburgh, for appellee.

Before COLINS, President Judge, FRIEDMAN, J., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Carol M. Captline and Equibank, N.A., (together, Mazzaro), as co-executors of the Estate of Mike Mazzaro, appeal from an order of the Court of Common Pleas of Allegheny County (trial court) denying Mazzaro's request for reimbursement of reasonable appraisal, attorney and engineering fees incurred in litigating an eminent domain action against the County of Allegheny (County). The County cross-appeals, claiming that the trial court erred in assuming that this action involves a *de facto*, rather than a *de jure*, condemnation.

This case has a history that spans forty years and has come before this court on two prior occasions. Briefly stated, the facts are as follows. In 1955, Mike Mazzaro purchased the surface rights to 104.085 acres of land in Findlay Township from Cosgrove Coal Company (Cosgrove); in the deed, Cosgrove expressly reserved for itself all mineral rights underlying the land, but Mike Mazzaro acquired an option to purchase those mineral rights in the future. In 1958 and 1959, seeking to expand the airport in Pittsburgh, the County condemned "in fee simple, said property being owned by Mike Mazzaro" and petitioned for appointment of a board of viewers (1958/59 condemnation). Cosgrove received no notice of the 1958/59 condemnation. In 1961, the board of viewers awarded Mike Mazzaro $71,980.00 in compensation and delay damages for the 1958/59 *de jure* taking of the subject property, without allocating any of this amount to Cosgrove. In 1965, Mike Mazzaro exercised his option and acquired all of Cosgrove's subsurface mineral rights by way of quitclaim deed. After Mike Mazzaro's death in 1974, his estate succeeded to his interest in the mineral rights.

In 1979, the County Commissioners contracted for the grading, paving, drainage and lighting for an extension of an airport taxiway on the subject property. The contract authorized the contractor to take any coal excavated in the process of this construction. In 1981, after discovering that the coal was being removed, Mazzaro petitioned the trial court for the appointment of a board of viewers under section 502(e) of the Eminent Domain Code (Code).[1] Claiming that the 1958/59 condemnation effected a *de jure* taking of the property's surface estate only, Mazzaro sought payment of just compensation for the 1979 *de facto* taking of its mineral estate.[2] The County filed preliminary objections which the trial court sustained, holding that the County had taken the mineral estate as part of the 1958/59 *de jure* condemnation and had paid for that property interest fully in the 1961 board of viewers' award to Mike Mazzaro.

In *Captline v. County of Allegheny*, 74 Pa.Cmwlth. 85, 459 A.2d 1298 (1983) (*Captline I*), we considered Mazzaro's appeal from that decision. We agreed with the trial court that the County's 1958/59 *de jure* condemnation of the property must be considered a condemnation of both the surface and mineral estates in the land. However, we remanded the case for a determination of whether Cosgrove received adequate notice of that taking and for a determination of whether the statute of limitations had run as to a claim for compensation.

On remand, the trial court considered the fact that Mike Mazzaro purchased the mineral estate in 1965 by exercising the option acquired from Cosgrove in 1955. The trial court then held that, because the County acquired all of Mike Mazzaro's property rights in the 1958/59 condemnation, and Mike Mazzaro did not seek compensation for the loss of his option to purchase Cosgrove's

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e), provides that, where a compensable injury is suffered for which no declaration of taking has been filed, a condemnee may file a petition for the appointment of a board of viewers setting forth such injury.

2. In addition to its petition for the appointment of a board of viewers, Mazzaro filed a trespass action against the contractor. The trial court dismissed the trespass action, and we affirmed the dismissal in view of our determination that the coal interest was subject to the 1958/59 condemnation. *Captline v. County of Allegheny*, 74 Pa.Cmwlth. 85, 459 A.2d 1298 (1983) (*Captline I*), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984).

mineral estate at that time, the statute of limitations barred Mazzaro's claim.[3]

On appeal, we reversed the second decision of the trial court. Noting that Mazzaro was unaware that the mineral estate had been taken during the 1958/59 condemnation, we reasoned that the six year statute of limitations for *de jure* condemnations only began to run in 1979, when the contractor's excavation of the coal provided Mazzaro with notice of the condemnation of the mineral estate. Thus, we held that Mazzaro's action seeking damages for the taking of the mineral interest, filed in 1981, was timely. *Captline v. County of Allegheny*, 662 A.2d 691 (Pa. Cmwlth.1995) (*Captline II*). Accordingly, we remanded the case with directions to the board of viewers to assess the total value of the surface and mineral estates in the land taken as of the 1958/59 condemnation, to subtract the amount already paid to Mike Mazzaro in the 1961 damage award and to pay Mazzaro any additional compensation owed for the mineral rights.

On remand, the trial court considered extensive expert testimony and concluded that, because the mineral rights had no economic value, the County did not owe Mazzaro any additional compensation for the 1958/59 *de jure* taking of the subject property. Consequently, the trial court "awarded" Mazzaro $0.00.[4] Mazzaro then petitioned for reimbursement of $52,846.00 in appraisal, attorney and engineering fees under section 609 of the Code,[5] which provides:

> Where proceedings are instituted by a condemnee under section 502(e), a judgment awarding compensation to the condemnee for the taking of property shall include reimbursement of reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred.

26 P.S. § 1–609.

The trial court ruled that Mazzaro's fees were reasonable, but denied the reimbursement. In doing so, the trial court ignored the County's argument that section 610 of the Code,[6] rather than section 609 of the Code, governs Mazzaro's rights to reimbursement;[7] instead, the trial court simply assumed that section 609 of the Code applied to the proceedings. The trial court then determined that, because it did not award any compensation to Mazzaro, section 609 did not authorize a reimbursement of fees to Mazzaro.[8] Mazzaro now appeals from that

3. The trial court recognized that, at the time of the 1958/59 condemnation, the "property being owned by Mike Mazzaro" included both the surface estate of the subject property and the option to purchase the underlying mineral estate still owned by Cosgrove. The trial court determined that Mike Mazzaro's option created a contract right to purchase the mineral estate so that, in 1958/59, when the County rendered the exercise of that option impossible by condemning all estates in the land, Mike Mazzaro was entitled to seek damages for the value of his option. The trial court reasoned that because Mike Mazzaro failed to seek such damages at the time of the 1958/59 condemnation, the statute of limitations barred his action for compensation.

4. Mazzaro appealed the $0.00 award, but the appeal was quashed on procedural grounds.

5. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, added by Section 7 of the Act of December 29, 1971, P.L. 639, 26 P.S. § 1–609.

6. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, added by Section 7 of the Act of December 29, 1971, P.L. 640, 26 P.S. § 1–610.

7. A *de jure* condemnation is one initiated by the condemning body in compliance with all statutory requirements, whereas a *de facto* condemnation occurs outside the legal process when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his or her property. *See Conroy–Prugh Glass Co. v. Department of Transportation*, 456 Pa. 384, 321 A.2d 598 (1974). This distinction is important because it determines which provision of the Code governs a condemnee's entitlement to fee reimbursement. In the case of a *de jure* condemnation of property, section 610 of the Code applies and establishes a $500.00 limit on the amount which a condemnee may receive toward reasonable expenses incurred for appraisal, attorney and engineering fees. However, section 609 of the Code applies to a *de facto* condemnation of property; under that section, a condemnee's award of compensation includes full reimbursement for reasonable appraisal, attorney and engineering fees actually incurred.

8. Mazzaro had argued that the trial court could award fees under section 609 based on the 1961 award of compensation; however, in rejecting this argument, the trial court noted that the 1961 compensation award was not part of the proceedings instituted by Mazzaro in 1981 under section 502(e) of the Code and, therefore, section 609 still did not authorize fee reimbursement.

decision, claiming entitlement to the reimbursement of its reasonable fees, and the County cross-appeals, arguing that the trial court erred in assuming that section 609 of the Code applied in this *de jure* condemnation case.[9]

In determining whether Mazzaro is entitled to reimbursement of its reasonable appraisal, attorney and engineering fees, we first must consider whether section 609 of the Code applies to these proceedings. The County maintains that, because the 1958/59 condemnation was a *de jure* taking of all estates in the property, Mazzaro's rights to reimbursement of appraisal, attorney and engineering fees is governed by section 610 of the Code. Mazzaro, on the other hand, claims that section 609 of the Code is applicable here because this litigation, involving the value of the mineral rights, is not part of the 1958/59 *de jure* taking of the surface estate but, rather, is a separate *de facto* case filed in 1981 under section 502(e) of the Code. We agree with the County.

 Section 609 of the Code only governs the award of damages for a condemnee's fees and costs in the event that the taking is a *de facto* taking. *Harborcreek Township v. Ring*, 131 Pa.Cmwlth. 502, 570 A.2d 1367, *appeal denied*, 525 Pa. 629, 578 A.2d 416 (1990). We recognize that Mazzaro filed its action in 1981 pursuant to section 502(e) of the Code; however, despite Mazzaro's claim that this is a *de facto* case, we cannot lose sight of the fact that this lawsuit actually involves the value of mineral rights taken in the County's 1958/59 *de jure* condemnation. Indeed, in *Captline I*, this court agreed with the trial court that the County had taken both the surface and mineral estates at the time of the 1958/59 condemnation, and there is no dispute that the 1958/59 condemnation was a *de jure* taking. Moreover, we subsequently reaffirmed the *de jure* taking of the mineral estate in *Captline II*, when we applied a six year statute of limitations to Mazzaro's claim for compensation for that taking, as opposed to the twenty-one year statute of limitations applicable to *de facto* takings. Therefore, because Mazzaro's mineral rights were taken in a *de jure* proceeding, and because no *de facto* taking ever took place, section 609 of the Code does not apply here.[10] Instead, Mazzaro's remedy is governed by section 610 of the Code, which limits any reimbursement of fees and costs associated with litigating the mineral rights compensation award to $500.00.[11]

 Based on the foregoing reasons, we grant the County's cross-appeal, and we affirm the trial court's denial of Mazzaro's petition for reimbursement of reasonable ap-

9. Our scope of review of a trial court decision in an eminent domain matter is limited to determining whether the trial court abused its discretion, committed an error of law or whether the findings and conclusions are supported by sufficient evidence. *Captline II.*

10. The comment to section 609 of the Code supports this determination. That comment states:

This is one of the three sections under which the condemnee is entitled to receive full reimbursement of reasonable appraisal, attorney and engineering fees, as required by Section 304 of the Federal relocation act, 42 U.S.C. 4654. The other two sections are Section 406(e) where a declaration of taking is voided by a court upon preliminary objections of a condemnee and Section 408 where a condemnation is revoked by a condemnor. *The instant section is applicable only where a condemnor is found by the court to have taken property without the filing of a declaration of taking;* it does not apply to consequential damage claims under Section 612 or to damages for vacation of roads under Section 613, since there is no "taking" in such cases.

(Emphasis added). Here, no court ever found that the County took the mineral estate without filing a declaration of taking; to the contrary, the courts determined that, through the 1958/59 *de jure* condemnation, the County took all estates in the subject property, including the mineral estate.

11. Section 610 of the Code provides:

The owner of any right, title or interest in real property acquired or injured by an acquiring agency, who is not eligible for reimbursement of such fees under sections 406(e), 408 or 609 of this act, shall be reimbursed in an amount not to exceed five hundred dollars ($500) as a payment toward reasonable expenses actually incurred for appraisal, attorney, and engineering fees.

26 P.S. § 1–610. Because none of the Code sections enumerated in this provision apply here, section 610 is the only appropriate remedy available to Mazzaro. Thus, because Mazzaro makes no claim that he failed to receive this $500.00 reimbursement in the 1961 *de jure* award, we conclude that Mazzaro's receipt of fees at that time satisfied the County's obligation.

praisal, attorney and engineering fees in the amount of $52,846.00.[12]

## ORDER

AND NOW, this 26th day of March, 1999, we hereby grant the appeal of the County of Allegheny, and we affirm the order of the Court of Common Pleas of Allegheny Coun-ty, dated January 28, 1998, for the reasons set forth in this opinion.

12. Rather than accept the trial court's reasons for its decision, we affirm the order of the trial court on the basis that section 609 of the Code does not apply here. We may still affirm the trial court, if its decision is correct, even though the reasons given to sustain that result were erroneous. *Equitable Life Assurance Society of the United States v. Murphy*, 153 Pa.Cmwlth. 338, 621 A.2d 1078 (1993).